STATE OF CONNECTICUT *v.*
JENNIFER HELMEDACH
(AC 31420)

Gruendel, Flynn and Dupont, Js.

Argued May 27—officially released November 23, 2010

*Lauren Weisfeld*, senior assistant public defender, for the appellant (defendant).

*Robert J. Scheinblum*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Gary W. Nicholson*, senior assistant state's attorney, for the appellee (state).

*Hope C. Seeley* and *Jill M. Spector*, pro hac vice, filed a brief for the National Clearinghouse for the Defense of Battered Women as amicus curiae.

*Opinion*

GRUENDEL, J. The defendant, Jennifer Helmedach, appeals from the judgment of conviction, rendered after a jury trial, of felony murder in violation of General Statutes § 53a-54c, conspiracy to commit robbery in the third degree in violation of General Statutes §§ 53a-48 and 53a-136, and robbery in the first degree in violation of General Statutes § 53a-134 (a) (1). On appeal, the defendant claims that the court improperly (1) declined to alleviate the jury's confusion regarding the statutory exception to the defense of duress by failing to define the term "situation," as that term appears in General Statutes § 53a-14,[1] to refer to the circumstances existing at the time of the crime and (2) charged the jury on the statutory exception to the defense of duress when there was no evidence adduced at trial that would have allowed the jury reasonably to conclude that the defendant intentionally or recklessly placed herself in a situation in which it was probable that she would be subject to duress. We disagree and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. David Bell was a drug dealer who had two girlfriends, the defendant and Xaimayra Sevilla-Cruz. Both girlfriends knew of Bell's relationship with the other, both lived with Bell at his mother's apartment in Middletown, and both were verbally and physically abused by Bell. Bell called the defendant, inter alia, "[s]tupid white bitch," "cracker" and "whore . . . ." Bell physically

---

[1] General Statutes § 53a-14 provides: "In any prosecution for an offense, it shall be a defense that the defendant engaged in the proscribed conduct because he was coerced by the use or threatened imminent use of physical force upon him or a third person, which force or threatened force a person of reasonable firmness in his situation would have been unable to resist. The defense of duress as defined in this section shall not be available to a person who intentionally or recklessly places himself in a situation in which it is probable that he will be subjected to duress."

abused the defendant by shoving, smacking, punching and choking her.

In May, 2003, the defendant witnessed Bell repeatedly punch the then pregnant Sevilla-Cruz, throw her to the ground and stomp on her head. As a result of that incident, after which Sevilla-Cruz was hospitalized, Bell was sentenced to one year in prison. While Bell was in prison, the defendant moved out of his mother's apartment and into the home of a relative in Middlefield. The defendant and Bell communicated by mail and telephone during his incarceration.

Following Bell's release from prison in June, 2004, the defendant left her relative's home to be with Bell. The defendant stayed with various friends, Bell's sister and Bell's brother. The defendant and Bell spent several nights together but not every night. For approximately the first one and one-half months following his release from prison, Bell did not verbally or physically abuse the defendant. Thereafter, Bell again began to abuse the defendant verbally and physically.

Sometime in August, 2004, Bell and the defendant planned to rob the victim, Faye Bennett, a friend of the defendant. On September 2, 2004, the defendant lured the victim to an apartment in Meriden, where she and Bell had been staying. There, Bell stabbed the victim in the neck with a knife and strangled her.[2] Bell and the defendant then stole the victim's pocketbook and Chevrolet Blazer. They left the state, traveled to New Jersey and then to New York, where they later were apprehended. A jury trial followed, at the conclusion of which the defendant was convicted of felony murder, conspiracy to commit robbery in the third degree and

---

[2] The victim was pregnant at the time of her murder. Her unborn child died in utero.

robbery in the first degree. From that judgment, the defendant appeals.[3]

## I

The defendant claims that the court improperly declined to alleviate the jury's purported confusion regarding the statutory exception to the defense of duress by failing to define the term "situation," as that term appears in § 53a-14. Specifically, she contends that the court should have defined the term "situation" to refer to the circumstances existing at the time of the crime on September 2, 2004. We disagree.

The record reveals the following additional facts that are relevant to our resolution of the defendant's claim. At the close of trial, the court charged the jury on the defense of duress and its statutory exception as follows: "In this case, the defense maintains that [the defendant] is not guilty of robbery in the first degree or felony murder because she acted as she did only under duress. This defense does not apply to the second count alleging conspiracy.[4]

"Duress is defined in § 53a-14 of the Penal Code, which provides in relevant part: In any prosecution for an offense, it shall be a defense that the defendant engaged in the proscribed conduct because she was coerced by the use or threatened imminent use of physical force upon her or a third person—which force or threatened force a person of reasonable firmness in her situation would have been unable to resist.

"It is the state's burden to prove beyond a reasonable doubt that [the defendant] did not act under duress. The defense of duress is not available to a person who intentionally or recklessly places herself in a situation

---

[3] The defendant does not appeal from her conviction of conspiracy to commit robbery in the third degree.

[4] See footnote 3 of this opinion.

in which it is probable that she will be subjected to duress." The defendant took exception to the court's instruction concerning the statutory exception to the defense of duress.

After the jury began deliberations, it submitted to the court a note that provided in relevant part: "Question on 'Duress'? A further explanation in [layman's] terms. Concerning the willingness to re-enter the 'negative situation.' " In response, the court stated: "Unfortunately, ladies and gentleman, I could only provide you with the instruction on duress that you already had. It's in the blue book.[5] The rules do not permit me to go on in that instruction."

The next day, the defendant submitted a supplemental request to charge in an effort to respond to the jury's question regarding the defense of duress. Specifically, the defendant requested that the court further address the jury's request for fear that "tell[ing] [the] jury, you know, if you find that [the defendant], in going back to the abuser, back to David Bell, intentionally or recklessly put herself in a situation where duress is likely, then it's not available, that is to say to a jury, battered women don't have a duress defense. That was my concern about that sentence." The court rejected the defendant's supplemental request to charge, explaining: "The question requests a further explanation in layman's terms concerning the willingness to reenter the negative situation. Upon reviewing this question and upon reconsideration of the whole issue, I don't see where— frankly, I don't think that I have the authority to do this . . . unless the question specifically asks for this information, which it does not. I think that this is a dangerous precedent to start recharging a jury after they have begun their deliberations because I think they

---

[5] The blue book refers to the standard Connecticut criminal jury instructions.

are going to sit there and they are going to wonder, why am I telling them this? Am I recharging them on something that they didn't ask about? I think that that might lead to further confusion. So, it clearly does not respond to the question."

Subsequently, the defendant submitted another supplemental request to charge on the defense of duress. Specifically, the defendant requested that the court charge the jury that "[t]he 'situation' referred to in this instruction refers to the particular circumstances surrounding the alleged criminal activity of September 2, 2004." The court rejected that supplemental request to charge, explaining: "[Y]ou want me to tell the jury that the situation referred to in the instruction refers to the particular circumstances surrounding the September 2, 2004 incident, and not her choice to return to her relationship with Mr. Bell. I am not at all convinced that's an accurate statement. It seems to me that whether, based upon all the evidence in this case . . . whether or not her returning to that relationship, given the background of that relationship, given its abusive nature, I think that that is a question of fact for the jury, and for me to give this instruction would be removing that question of fact from their domain, and I decline to do that."

Thereafter, the court summoned the jury to readdress its request for further explanation concerning the defense of duress. The court stated: "Yesterday, in one of your notes, you expressed a desire to have some clarification of the defense of duress, specifically, the exception to the defense of duress when someone— that the defense is not available when someone intentionally or recklessly puts [herself] in a position where duress is likely to occur. In thinking about that, it occurs to me that there—I just want to instruct you a little further on that, in that particular area with respect to the issue of burden of proof. And I want to tell you that

I will just remind you that the state has the burden of disproving the defense of duress beyond a reasonable doubt. You have been instructed that the defense of duress is not available to one who intentionally or recklessly places herself in a situation in which it is probable that she could be subject to duress. The state has the burden to prove beyond a reasonable doubt that the defendant intentionally or recklessly placed herself in a situation in which it was probable that she would be subject to duress."

On appeal, the defendant claims that the court improperly declined to define the term "situation," as that term appears in § 53a-14, after the jury had manifested some confusion on such. Specifically, the defendant contends that the court had a duty to define the term "situation" as referring to the circumstances existing at the time of the crime on September 2, 2004. More specifically, the defendant contends that the court should have instructed that the jury "could not consider the defendant's so-called willingness to 're-enter' the negative relationship or 'situation' [with Bell] as evidence of recklessness or intentionality . . . ."[6] We disagree.

"The standard of review for claims of instructional impropriety is well established. [I]ndividual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under

---

[6] The National Clearinghouse for the Defense of Battered Women was granted permission to file an amicus brief. In its brief, it claims that the statutory exception to the defense of duress was not meant to apply to a battered woman's decisions regarding staying in or leaving abusive relationships. It also claims that a battered woman's act of remaining in or returning to an abusive relationship does not make her responsible for subsequent victimization and violence by the batterer.

the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . In other words, we must consider whether the instructions [in totality] are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury." (Internal quotation marks omitted.) *State* v. *Castillo*, 121 Conn. App. 699, 707, 998 A.2d 177, cert. denied, 297 Conn. 929, 998 A.2d 1196 (2010).

"The duty of the trial court [in a criminal case] is to instruct the jury on the law applicable to the case. . . . It is the duty of the court, in charging the jury in a criminal case, to give them such instructions as may be required to enable them to understand the nature of the offense charged and the questions which they are to decide, to weigh the evidence applicable to such questions, and to intelligently decide them. . . . The defendant is entitled to a jury which is correctly and adequately instructed." (Citations omitted; internal quotation marks omitted.) *State* v. *St. Pierre*, 58 Conn. App. 284, 291–92, 752 A.2d 86, cert. denied, 254 Conn. 916, 759 A.2d 508 (2000). "It is of the utmost importance that the instructions be clear and comprehensible and provide guidance to the jury in applying the law to the facts it finds established." *State* v. *Fletcher*, 10 Conn. App. 697, 704, 525 A.2d 535 (1987), aff'd, 207 Conn. 191, 540 A.2d 370 (1988).

General Statutes § 1-1 (a) provides: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and

such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." Because § 53a-14 does not define the term situation, it is given its common and ordinary meaning. The defendant contends that because the common and ordinary meaning of the term situation can mean either a "combination of circumstances at a certain point in time" or a "trying state of affairs;" see Merriam-Webster Dictionary available online at http://www.merriam-webster.com/dictionary/situation (accessed 11/8/10); the court had a duty to define that term.[7] We are not persuaded. "[T]he definition of words in our standard dictionaries is taken as a matter of common knowledge which the jury is supposed to possess." (Internal quotation marks omitted.) *State* v. *Dickman*, 119 Conn. App. 581, 595, 989 A.2d 613, cert. denied, 295 Conn. 923, 991 A.2d 569 (2010); cf. *State* v. *Ramos*, 261 Conn. 156, 168 n.13, 801 A.2d 788 (2002) ("even where a statutory definition exists, the trial court is not required necessarily to provide that definition in its instructions to the jury"). Because the term situation does not have a statutory definition under § 53a-14, it is taken that the jury, as a matter of common knowledge, comprehends that term. The court, therefore, was not obligated to define the term situation.

Moreover, if the court was obligated to define the term situation in the manner advanced by the defendant, as a combination of circumstances at a certain point in time, the court implicitly would have factually found that by returning to Bell after he was released from prison, the defendant did not recklessly or intentionally place herself in a situation in which it was likely that she would be subject to duress. The court declined to define the term situation for this reason. We agree

---

[7] The defendant also argues that "[i]f the legislature did not intend to focus on the situation at the time of the acts, it would not have specified that the requisite coercive force must have been 'imminent.' " We disagree.

with the court that defining the term situation in the manner advanced by the defendant would have impinged on the exclusive province of the jury to find facts. See *State* v. *Ovechka*, 292 Conn. 533, 541, 975 A.2d 1 (2009); see also *State* v. *Mungroo*, 104 Conn. App. 668, 673, 935 A.2d 229 (2007) (choosing among competing inferences within exclusive province of jury), cert. denied, 285 Conn. 908, 942 A.2d 415 (2008).

In addition, there was no evidence that the defendant was under duress of any sort from Bell on the day of the murder. Although the defendant testified that she and Bell had had an argument on the morning of September 2, 2004, she did not indicate that the argument was accompanied by any threats or abuse, either verbal or physical, and could not recall what the argument was about. Following the argument, Bell and the defendant were not together again until Bell entered the room in Meriden where she and the victim were located, minutes before Bell stabbed the victim. The defendant left her Meriden apartment twice during the day on September 2, accompanied only by her daughter, once to buy cigarettes and once to call the victim. Otherwise, she remained in the apartment with her daughter and, later, with her daughter and the victim. Although the defendant testified that Bell had displayed a knife just before he repeatedly stabbed the victim, she did not testify that Bell threatened to use the knife on her in any way.[8]

---

[8] Even if we assume arguendo that the defendant's requested instruction that "situation" under § 53a-14 be defined in such a way as to limit its application to the day of the murder, the defendant's claim would fail nonetheless. Adopting the defendant's argument, because the record discloses no evidence of duress on the day of the murder, there would be no need for a duress instruction by the court. Thus, the defendant's argument is wholly meritless. See *State* v. *Scribner*, 72 Conn. App. 736, 740, 805 A.2d 812 (2002) ("[A] request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given. . . . Conversely, it also is true that a court is under no duty to give a requested jury instruction that is an improper statement of law. Accordingly, if this court concludes that the requested jury instruction was an improper state-

Finally, we consider whether the court properly responded to the jury after the jury had expressed some confusion with regard to the defense of duress and its statutory exception. Practice Book § 42-27 provides: "If the jury, after retiring for deliberations, requests additional instructions, the judicial authority, after providing notice to the parties and an opportunity for suggestions by counsel, shall recall the jury to the courtroom and give additional instructions necessary to respond properly to the request or to direct the jury's attention to a portion of the original instructions." See *State* v. *Fletcher*, supra, 10 Conn. App. 705 ("[c]larification of the instructions when the jury or one of its members manifests confusion about the law is mandated"). The court responded to the jury's confusion by repeating its instruction regarding the statutory exception to the defense of duress and emphasized that the burden of proof was on the state to prove beyond a reasonable doubt that the defendant intentionally or recklessly placed herself in a situation in which it was probable that she would be subject to duress. Thereafter, the jury made no further inquiries of the court, nor did it express any further confusion on the matter. Because the jury expressed no further confusion, we presume that the court's additional instructions provided a necessary response and alleviated any confusion the jury may have had. We also note that the court's original and additional instructions were correct in law, as it appears as though they were modeled on the instructions set forth in the Connecticut Criminal Jury Instructions. See Connecticut Criminal Jury Instructions (2008 Ed.) § 2.7-3 available on the Connecticut Judicial Branch website, http://www.jud.ct.gov/JI/criminal/part2/2.7-3.htm (accessed 11/8/10). "The jury

ment of law, the defendant is not entitled to the requested jury instruction and the court's refusal [to give such an instruction is] proper." [Citation omitted; internal quotation marks omitted.]).

is presumed, in the absence of a fair indication to the contrary, to have followed the court's instructions." (Internal quotation marks omitted.) *State* v. *McKenzie-Adams*, 281 Conn. 486, 544, 915 A.2d 822, cert. denied, 552 U.S. 888, 128 S. Ct. 248, 169 L. Ed. 2d 148 (2007). Accordingly, we conclude that the court's instruction, viewed as a whole, did not mislead the jury.

## II

The defendant also claims that the court improperly charged the jury on the statutory exception to the defense of duress because there was no evidence adduced at trial that would have allowed the jury reasonably to conclude that she intentionally or recklessly placed herself in a situation in which it was probable that she would be subject to duress. We disagree.

"[I]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . In other words, we must consider whether the instructions [in totality] are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury." (Internal quotation marks omitted.) *State* v. *Castillo*, supra, 121 Conn. App. 707. Furthermore, "[t]he court . . . has a duty not to submit to the jury, in its charge, any issue upon which the evidence would not reasonably support a finding." *State* v. *Diggs*, 219 Conn. 295, 299, 592 A.2d 949 (1991).

"It is well established that General Statutes § 53a-14 provides that duress is a defense to a crime. . . . The right of a defendant charged with a crime to establish a defense is a fundamental element of due process. . . . This fundamental constitutional right includes proper jury instructions on the burden of proof on the defense of duress so that the jury may ascertain whether, under all the circumstances, the state has met

its burden of proving beyond a reasonable doubt that the crimes charged were not committed under duress. Duress . . . [is a] recognized [defense] to [a] criminal [charge] because [it] . . . implicate[s] the volitional aspect of criminality. . . . The state's burden of proof beyond a reasonable doubt encompasses, in an appropriate case, a burden of disproving duress beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.) *State* v. *Heinemann,* 282 Conn. 281, 298–99, 920 A.2d 278 (2007).

"[E]ven where the evidence is sufficient to establish the elements of duress, the defendant still may not be entitled to avail himself of the defense. Duress is not a refuge. The duress defense is not available if the evidence establishes that the defendant recklessly placed himself in a situation where it was probable that he would be subject to duress. Recklessly in this context has been defined to mean: A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation. . . . Therefore, like the test for determining whether the defendant was subject to duress, the test for determining whether a defendant acted recklessly . . . is a hybrid objective-subjective one. . . . The trier of fact must decide whether the defendant disregarded a risk that involves a gross deviation from what an objective[ly] reasonable person would observe if he was placed in the [defendant's] situation. . . . Thus, in making its determination, the trier of fact must again take into account the stark

tangible factors[9] that differentiate the defendant from another person and the salient situational factors[10] surrounding the defendant." (Internal quotation marks omitted.) Id., 306–307.

On our review of the record, we conclude that there was sufficient evidence for the court to have charged the jury on the statutory exception to the defense of duress. Prior to Bell's being sent to prison for severely beating Sevilla-Cruz, there was evidence that Bell verbally and physically abused the defendant and used physical force and threats of physical force to control the defendant. Christina Linebarger, a friend of the defendant, testified that on one occasion, she observed Bell push the defendant against the wall and tell the defendant, "you are not fucking going anywhere." Linebarger added that "[t]here were times that [the defendant] wanted to go out, and [Bell] said, you are not going anywhere, fucking bitch, you are staying here with me . . . ."

There also was evidence that the defendant knew that Bell was involved in criminal activity. The defendant testified that Bell was involved in criminal activity— namely, selling illegal drugs. Although the defendant was not directly involved in that criminal activity, Sevilla-Cruz was directly involved. There also was evidence that Bell was more abusive to Sevilla-Cruz than to the defendant.

While Bell was in prison, the defendant moved out of the apartment of Bell's mother and into the home of a relative. When Bell was released from prison after one year, the defendant moved out of her relative's

---

[9] "Stark, tangible factors that differentiate the actor from another, like his size, strength, age, or health" may be considered. *State* v. *Heinemann*, supra, 282 Conn. 304.

[10] "[S]alient situational factors surrounding the defendant at the time of the alleged duress, including the severity of the offense the defendant was asked to commit, the nature of the force used or threatened to be used, and the alternative ways in which the defendant may have averted the force

house, and she started to see Bell again. The defendant testified that Bell treated her well for about one and one-half months following his release from prison, at which point he again began to abuse her verbally and physically.

There also was evidence that the defendant became more involved in criminal activity with Bell following his release from prison. Sevilla-Cruz testified that in August, 2004, the defendant and Bell asked her if she would like to participate in robbing Bennett but that she declined. Sevilla-Cruz also testified that the defendant told her that she and Bell had robbed a woman of her jewelry in late August, 2004. Finally, there was evidence that the defendant knew that Bell had assaulted an individual with a knife, prior to the murder of Bennett. Specifically, the defendant testified that in late August, she learned that Bell had stabbed Gregory Richard, the boyfriend of Bell's sister, with a knife after Richard tried unsuccessfully to have sex with the defendant.[11] The defendant further stated that Bell usually carried a knife with him when he left the house. Bell stabbed the victim in the neck with a knife. Accordingly, the aforementioned evidence, if credited by the jury, reasonably could have led the jury to conclude that the defendant intentionally or recklessly placed herself in a situation in which it was probable that she would be subject to duress.[12] In light of the foregoing, the defendant's claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.

---

or threatened force" may be considered. *State* v. *Heinemann*, supra, 282 Conn. 306.

[11] Aiding Bell in the assault were two other men, at least one of whom was one of Bell's brothers, Lucas Bell, Stephen Bell or a third brother from Chicago, Illinois.

[12] The defendant also claims that the court improperly instructed the jury on the statutory exception to the defense of duress because there was no evidence that the defendant would have been subject to duress to commit the specific crimes of felony murder and robbery in the first degree. As

stated earlier, our Supreme Court has noted: "The duress defense is not available if the evidence establishes that the defendant recklessly placed himself in a situation where it was probable that he would be subject to duress. 'Recklessly' in this context has been defined to mean: 'A person acts recklessly with respect to *a material element of an offense* when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct.'" (Emphasis added.) *State* v. *Heinemann,* supra, 282 Conn. 306.

General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime . . . ." On our review, we conclude that the jury reasonably could have concluded that the defendant reentered the relationship with Bell, and, in so doing, recklessly placed herself in a situation in which it was probable that she would be subject to duress to commit a crime in which Bell would cause serious physical injury to another person.