## STATE OF CONNECTICUT *v.* JASON SHOLA AKANDE
### (SC 18325)

Rogers, C. J., and Norcott, Katz, Palmer and Zarella, Js.

Argued April 28, 2010—officially released January 5, 2011*

* January 5, 2011, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Katherine C. Essington*, special public defender, for the appellant (defendant).

*Harry Weller*, senior assistant state's attorney, with whom, on the brief, were *Kevin T. Kane*, chief state's attorney, and *Kevin M. Shay*, assistant state's attorney, for the appellee (state).

*Opinion*

ROGERS, C. J. The defendant, Jason Shola Akande, appeals from the judgment of the Appellate Court affirming his conviction, rendered after a jury trial, of two counts of forgery in the second degree in violation of General Statutes § 53a-139 (a) (1) and (2),[1] and two counts of larceny in the sixth degree in violation of

---

[1] General Statutes § 53a-139 (a) provides in relevant part: "A person is guilty of forgery in the second degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument or issues or possesses any written instrument which he knows to be forged, which is or purports to be, or which is calculated to become or represent if completed: (1) A deed, will, codicil, contract, assignment, commercial instrument or other instrument which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status; or (2) a public record or an instrument filed or required or authorized by law to be filed in or with a public office or public servant . . . ."

General Statutes §§ 53a-119 (2)[2] and 53a-125b.[3] *State* v. *Akande*, 111 Conn. App. 596, 614, 960 A.2d 1045 (2008).

We granted certification to appeal limited to the following issue: "Did the Appellate Court properly determine that the defendant waived his claim that the jury instructions were constitutionally deficient?" *State* v. *Akande*, 290 Conn. 918, 919, 966 A.2d 237 (2009). We conclude that the Appellate Court properly determined that the defendant waived his claim, and affirm the Appellate Court's judgment.

The Appellate Court opinion sets forth the following facts. "The defendant and the victim, Nelson Estremera, became acquainted at It's A Gee Thang barber shop on Main Street in Hartford. The defendant drove a black Mercedes-Benz and was dressed professionally each time Estremera saw him at the barber shop or around Hartford. The defendant told Estremera that his name was James Limerick. In conversation, the defendant told Estremera that he had a degree in computer engineering, that he was in the process of opening his own insurance business and that if Estremera ever needed any insurance to let him know.

"In October, 2004, Estremera's nephew gave him a car, a 1992 Chevrolet Lumina, and Estremera contacted the defendant to obtain automobile insurance for it. Estremera called the defendant, who told him to meet the defendant at what was known as the defendant's

[2] General Statutes § 53a-119 provides in relevant part: "Larceny includes . . .

"(2) Obtaining property by false pretenses. A person obtains property by false pretenses when, by any false token, pretense or device, he obtains from another any property, with intent to defraud him or any other person. . . ."

[3] General Statutes (Sup. 2010) § 53a-125b (a) provides in relevant part: "A person is guilty of larceny in the sixth degree when he commits larceny . . . and the value of the property or service is five hundred dollars or less." In 2004, when the defendant's alleged criminal conduct occurred, the statute specified the amount of $250 or less. Number 09-138, § 6, of the 2009 Public Acts increased that amount to $500.

'spot,' on a street off of Main Street, and to bring his birth certificate, social security card, the title to the car and his driver's license. The defendant arrived in his Mercedes-Benz and Estremera got into the defendant's car, where the transaction took place. The defendant told Estremera that it would cost only $250 to insure the Chevrolet Lumina because older people pay lower rates. Estremera gave the defendant all of the paperwork, and the defendant told Estremera that he would contact him within a few days. Once the defendant got in touch with Estremera, the two men met again in the defendant's car in the same spot. Estremera gave the defendant $250 in cash, and the defendant gave him an insurance card. The defendant told him that he would be able to register the car with the department of motor vehicles with this insurance card, and Estremera was in fact able to register the Lumina with no problems.

"About one month later, in November, 2004, Estremera needed insurance for another vehicle, an Oldsmobile, and he got in touch with the defendant again to obtain insurance for this vehicle. The defendant told Estremera that he needed to bring the defendant only the title to the new car because he already had all of Estremera's other information on file. The defendant again met with Estremera at the same location as their previous meetings, in the defendant's car, to complete the transaction. The defendant gave Estremera an insurance card in exchange for another $250 cash. This second insurance card had both of Estremera's cars listed on it, which Estremera found odd.

"On November 18, 2004, Estremera went to the department of motor vehicles in Wethersfield to register the Oldsmobile. Estremera gave an agent the new insurance card he had received from the defendant. After taking it, the agent indicated that a supervisor would be coming to speak to Estremera. The supervisor ques-

tioned him about where he got the card and eventually the police arrived. Estremera spoke to an officer and later went, of his own volition, to the Wethersfield police department where he gave a written statement and was shown a photographic array, from which he identified the defendant's photograph. The defendant was arrested in February, 2005, and charged with two counts of forgery in the second degree and two counts of larceny in the sixth degree." *State* v. *Akande*, supra, 111 Conn. App. 598–99.

Following a trial, the jury returned a verdict of guilty. Id., 599–600. The trial court rendered judgment in accordance with the verdict and sentenced the defendant to five years incarceration, execution suspended after time served, followed by three years probation. Id., 600. The defendant appealed from the judgment of the trial court to the Appellate Court, claiming that the trial court's jury instructions on the elements of forgery in the second degree, which consisted of an initial instruction and a written supplemental instruction, violated his constitutional due process rights by failing to sufficiently emphasize certain elements of the forgery offense. Id., 604. Specifically, the defendant claimed that the trial court's instruction should have "define[d] the issues or possesses elements of the crime of forgery in the second degree . . . ." (Internal quotation marks omitted.) Id., 606. Because the defendant had failed to preserve his claim at trial, he sought review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[4]

---

[4] *Golding* permits a defendant to "prevail on [an unpreserved] claim of constitutional error . . . only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 213 Conn. 239–40.

*State* v. *Akande*, supra, 111 Conn. App. 606. The Appellate Court held that the defendant was not entitled to *Golding* review because his acquiescence to the content of the trial court's supplemental jury instruction constituted a waiver of his claim of instructional error, and affirmed the judgment of the trial court. Id., 608–609. This appeal followed.

On appeal, the defendant claims that the Appellate Court improperly held that he waived his instructional error claim because "defense counsel did not affirmatively express his satisfaction with the charge" and because "[t]here is no indication in the record . . . [of] any substantive discussion between the court and the attorneys concerning the instruction on the elements of forgery." Accordingly, the defendant claims that his claim of instructional error is reviewable under *Golding*.[5] The state claims that the Appellate Court correctly construed defense counsel's acquiescence to the trial court's supplemental instruction as an implied waiver of the defendant's claim. We agree with the state.

---

[5] The defendant also reasserts his claim that the trial court improperly omitted an instruction concerning the essential elements of the crime of forgery in the second degree by failing to define the words "issuing," "possessing" and "knowledge." In support of his claim, the defendant notes that the model instruction for forgery by means of "issuing or possessing" a forged instrument includes definitions of those terms. See J. Pellegrino, Connecticut Selected Jury Instructions: Criminal (3d Ed. 2001) § 10.5, p. 538. The state counters that there was no instructional error and points out that the defendant is not claiming that the trial court's instruction contained any incorrect statement of law. Because we find that defense counsel's actions at trial support a finding of waiver, we will not reach the merits of the defendant's claim.

We emphasize, however, that the defendant's trial did not turn on the nuances of issuing, possessing or knowledge. The state's theory of the case was that the defendant created the insurance card and sold it to Estremera. The defendant never argued that his conduct failed to satisfy the dictates of the "issues or possesses" prong of the forgery statute. Rather, his defense was that Estremera was lying. Therefore, the omitted instructions pertain to an issue that was not a particular focus of the trial.

The following additional facts relate to the defendant's claim of instructional error. The source of that claim—the trial court's alleged incomplete description of the elements of forgery in the second degree—appeared in both the trial court's initial jury instruction and a later written supplemental instruction that the trial court provided in response to a specific request from the jury.[6] Defense counsel failed to submit a

[6] The transcript of the trial court's initial jury instruction provides in relevant part: "A person is guilty of forgery in the second degree when with intent to defraud, deceive or injure another he falsely makes, completes or alters a written instrument or issues or possesses any written instrument which he knows to be forged which is or purports to be or which is calculated to become or represent if completed a deed, will, codicil, assignment, commercial instrument, or other instrument which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status; or two, a public record or an instrument filed, required or authorized by law to be filed in or with a public office or public servant.

"Now, the information charges the defendant with two counts of forgery. The law states that a person is guilty of forgery when with intent to defraud, deceive or injure another, he falsely makes, completes or alters the written instrument. A 'written instrument' is any instrument or article containing written or printed matter or the equivalent thereof used for the purpose of reciting, embodying, conveying or recording information. A written instrument may be complete or incomplete.

"A 'complete written instrument' is one fully drawn with respect to every essential feature thereof whereas an 'incomplete written instrument' is one that requires additional matter or content to render it complete.

"Forgery may be consummated in any one of the following ways: Falsely making a completed written instrument, falsely making an incomplete written instrument, falsely completing an incomplete written instrument, falsely altering a complete written instrument, falsely altering an incomplete written instrument *or issuing or possessing any written instrument that he knows to be forged.* The law in reference to this crime uses the term 'falsely makes,' 'falsely completes,' 'falsely alters' a written instrument.

\* \* \*

"Thus, the crime of forgery may be committed by falsely making or preparing a written instrument, placing liability on a particular person or entity, or the maker or drawer did not authorize the making or drawing of the instrument; or, two, by falsely inserting or changing matter in an incomplete written instrument so as to make it appear as a genuine, fully authorized, complete written instrument; or, three, by falsely altering any complete or incomplete written instrument by erasure, obliteration, deletion or insertion so as to make it appear genuine and fully authorized.

"Now, if you find that the state has proven beyond a reasonable doubt each of the elements of the crime of forgery in the second degree, then you

request to charge or to take exception to any instructional language during the trial. Indeed, there is no indication in the record that any discussion of the proposed instructional language occurred prior to the trial court's recital of its initial jury charge. At the conclusion of the initial charge, however, the trial court solicited input from both parties by asking: "Anything about the charge?" The state replied: "No, Your Honor," but defense counsel failed to respond to the trial court's inquiry.[7]

During deliberations, the jury sent out a note signed by the foreman that stated: "We would like a copy of the text listing the points of forgery and of larceny for reference." In a discussion outside the presence of the jury, the court stated: "My suggestion on this is that we make copies of—I make a copy of what I read to them earlier on forgery and larceny given the length of those—those instructions. And given the late hour, since it's now 4:25 and we still haven't gotten through this and counsel's got to take a look at it, I will dismiss the jury now, tell them at 10 o'clock tomorrow they will get copies of that, and they can begin their deliberations again tomorrow.

"They really haven't even started because they sent a note out and then they asked for a break, which was understandable also. So what I'll do is I'll make copies of this. I'll give it to both counsel. We'll meet before

will find the defendant guilty. On the other hand, if you find that the state has failed to prove beyond a reasonable doubt any one of the elements, then you shall find the defendant not guilty. Remember, that goes to both counts of forgery." (Emphasis added.)

[7] Given the lack of evidence relating to defense counsel's opportunity to review the trial court's *initial* instruction, if the jury had not requested a supplemental instruction, this court could not construe defense counsel's acquiescence to the trial court's instruction as an implied waiver of the defendant's claim. Our waiver analysis focuses instead on defense counsel's opportunity to review and take exception to the *supplemental* instruction that the trial court provided in response to the jury's request.

court tomorrow, make sure it's all—everything's in order, and then we'll give it to them and they can get started fresh at 10 o'clock in the morning."

The trial court then solicited input from both counsel by asking: "Anybody have any other thoughts?" Defense counsel and the state both answered: "No, Your Honor."

The next morning, the trial court addressed the adequacy of its proposed written supplemental instruction by stating: "We had some discussions yesterday. We made some copies of the charge that they asked for, the forgery and the larceny. I—we made copies last night for both sides here. Anybody have any comments on what we want to do with this?" Again, defense counsel declined an opportunity to object to the proposed instructional language and simply answered: "No, Your Honor."

The trial court then directed both counsel to review the written supplemental instruction that the jury would receive to "make sure it doesn't have anything that's odd." After pausing to allow both parties to review the proposed language, the court indicated that it was assured that both counsel had examined the copy and asked a final time whether either counsel had "[a]nything else?" Again, defense counsel failed to comment on the proposed instructional language by answering: "No, Your Honor." The trial court then provided the jury with a copy of the written supplemental instruction as an exhibit.[8]

We have recently held that defense counsel's failure to object to a trial court's supplemental instruction constitutes waiver of a claim of instructional error. *State v. Foster*, 293 Conn. 327, 342, 977 A.2d 199 (2009). In *Foster*, at the conclusion of the court's initial charge,

---

[8] The defendant concedes that the trial court's written supplemental instruction on the elements of forgery in the second degree was virtually identical to the initial instruction that the trial court delivered from the bench.

defense counsel expressly stated that the trial court's instructions were proper but requested that the trial court remind the jury that it had to find beyond a reasonable doubt that the defendant was at the crime scene. Id., 340. The court responded by proposing a supplemental instruction that essentially repeated a portion of its initial alibi instruction. Id., 340–41. Defense counsel failed to object to either the proposed supplemental instruction or the supplemental instruction that the trial court actually delivered to the jury. Id., 341. Despite his express agreement at trial, on appeal, the defendant claimed that the trial court's supplemental instruction diluted the state's burden of proof. Id., 339. Relying on our decisions in *State* v. *Jones*, 193 Conn. 70, 475 A.2d 1087 (1984), and *State* v. *Whitford*, 260 Conn. 610, 799 A.2d 1034 (2002), we held that the defendant had waived his claim of instructional error by "assent[ing] to the [trial] court's instructions." *State* v. *Foster*, supra, 342.

The defendant relies, in part, on our decision in *State* v. *Ebron*, 292 Conn. 656, 975 A.2d 17 (2009), to distinguish his claim from the claim in *Foster*. In *Ebron*, this court held that, so long as the defendant did not actively induce the trial court to act on the challenged portion of the instruction, acquiescence to a trial court's instruction as given at trial does not amount to waiver. Id., 680. Accordingly, the defendant claims that, unlike the defendant in *Foster*, he did not actively induce the alleged instructional error by requesting or affirmatively advocating for the instruction he now challenges on appeal. Instead, he alleges that he merely acquiesced to the instructional language that the trial court delivered in response to the jury's request. In *State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011), however, we recently overruled the distinction between active inducement and acquiescence set forth in *Ebron* and held that certain conduct short of active inducement may be deemed an implicit waiver of an instructional

error claim.[9] In *Kitchens*, we held that "when the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal." Id., 482–83.

In the present case, the trial court provided defense counsel with a verbatim copy of the proposed supplemental instruction that the defendant now challenges, and a chance to review that copy overnight. The proposed supplemental instruction consisted of six pages and addressed only the elements of larceny and forgery. Defense counsel, therefore, had a meaningful opportunity to review a written copy of the trial court's specific proposed supplemental instruction in a deliberate manner without undue time constraints.[10] In addition, because the jury's note specifically referred to the "points of forgery," defense counsel had the benefit of reviewing the proposed instructional language with the

---

[9] Specifically, in *Kitchens*, we held that "to the extent we concluded in *Ebron* that the claim of an improper jury instruction is reviewable under *Golding* only if the instructional error is not induced or invited, even if counsel fails to object or demonstrates by other conduct that he or she is satisfied with the charge as given . . . we now overrule our holding in that case." *State* v. *Kitchens*, supra, 299 Conn. 472–73.

[10] Justice Katz, in her dissent, contends that we should not imply waiver in this case because the supplemental instruction was requested by the jury rather than defense counsel and that such requests "arise from unforeseen circumstances and often require prompt response to avoid undue interruption in jury deliberations." In fact, in this case, the trial court released the jury for the day and allowed both parties to review the copy of its written supplemental instruction overnight. We have no reason to believe that all of our trial court judges, particularly where the jury has expressed concern or confusion regarding jury instructions, will not allow adequate time for counsel to provide meaningful input.

knowledge that the elements of forgery in the second degree were a particular concern for the deliberating jury. Under these circumstances, we conclude that the rule of *Kitchens* applies to compel the conclusion that defense counsel was aware of the alleged instructional error and chose to waive any objection to it.

In sum, because defense counsel had a meaningful opportunity to review the supplemental instructional language and because the jury's specific request was sufficient to focus defense counsel's attention on the elements of forgery—the specific portion of the instruction that the defendant now challenges—we construe defense counsel's acceptance of the trial court's supplemental instruction as an implied waiver of the defendant's claim of instructional error.

The judgment of the Appellate Court is affirmed.

In this opinion NORCOTT and ZARELLA, Js., concurred.

KATZ, J., dissenting. By applying the newly established rule in *State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011), to determine that the defendant, Jason Shola Akande, waived review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[1] of a purported constitutional impropriety in a supplemental instruc-

_____

[1] Until this court's recent evisceration of this doctrine in *Kitchens* and its progeny, pursuant to *Golding*, a defendant could prevail on an unpreserved claim if: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial." (Internal quotation marks omitted.) *State* v. *Tomas D.*, 296 Conn. 476, 503, 995 A.2d 583 (2010).

tion requested by the jury[2] in his criminal trial, the majority has wrenched the holding in *Kitchens* away from its purported legal moorings and set it loose upon yet another area of our *Golding* jurisprudence. From this unwarranted extension of *Kitchens*, it appears that the battle to preserve *Golding* review of any instructional errors likely is lost, and although I recognize that "[w]hat's gone and what's past help [s]hould be past grief,"[3] I feel obliged to acknowledge how the majority's opinion in the present case undermines a foundational part of this court's role in protecting defendants' constitutional rights.

In concluding that a defendant may waive his right to a constitutional challenge to an improper jury instruction, the majority in *Kitchens* had relied on principles unique to the context of initial jury instructions: (1) a recognition that our rules of practice provide for substantial participation by counsel in formulating and reviewing jury instructions; (2) public policy that favors encouraging trial courts to hold charging conferences pursuant to Practice Book § 42-19;[4] and (3) public policy that favors encouraging defense counsel to "take advantage of the opportunities provided by the rules of practice, that is, to submit a request to charge, to seek an on-the-record charge conference and to raise objections whenever necessary . . . ." *State* v. *Kitchens*, supra, 299 Conn. 496. None of these principles support a finding of waiver in the wholly different context of supplemental instructions requested by the jury.

---

[2] It is clear from the majority opinion that waiver is being determined solely on the basis of the circumstances surrounding the supplemental instruction, not the allegedly deficient initial jury charge.

[3] W. Shakespeare, The Winter's Tale, act 3, sc. 2.

[4] Practice Book § 42-19 provides: "After the close of evidence but before arguments to the jury, the judicial authority shall, if requested, inform counsel out of the presence of the jury of the substance of its proposed instructions.

"The charge conference shall be on the record or summarized on the record."

Specifically, in crafting its novel approach to waiver of *Golding* review, the majority in *Kitchens* had focused on the particular context in which the purported waiver arose, namely, following a charging conference regarding the initial jury charge conducted pursuant to Practice Book § 42-19. Id., 493–94. The majority in *Kitchens* had presumed that this procedure necessarily provided ample opportunity for the defendant's participation in and reflection upon the proposed charge. In contrast to the process of crafting and approving initial jury instructions, however, the rules of practice do not set forth a process by which defense counsel may participate in proposing and crafting supplemental instructions.[5] This difference likely reflects the fact that supplemental instructions requested or prompted by the jury, by their very nature, arise from unforeseen circumstances and often require prompt response to avoid undue interruption in jury deliberations. Defense counsel is aware throughout an entire trial that the trial court will provide the jury with initial instructions; he or she is afforded no similar warning concerning supplemental instructions. Accordingly, the public policy concerns on which the *Kitchens* majority had relied simply are not implicated in cases, like the present one, con-

---

[5] Unlike Practice Book § 42-19; see footnote 4 of this dissenting opinion; the two rules of practice governing supplemental instructions, Practice Book §§ 42-24 and 42-25, are directed exclusively at the trial court and make no mention of defense counsel.

Practice Book § 42-24 provides: "The judicial authority, after exceptions to the charge, or upon its own motion, may recall the jury to the courtroom and give it additional instructions in order to:

"(1) Correct or withdraw an erroneous instruction;

"(2) Clarify an ambiguous instruction; or

"(3) Instruct the jury on any matter which should have been covered in the original instructions."

Practice Book § 42-25 provides: "If the judicial authority gives additional instructions, it also may give or repeat other instructions in order to avoid undue emphasis on the additional instructions. Additional instructions shall be governed by the procedures set forth in Section 42-16 concerning exceptions."

cerning supplemental jury instructions, especially when such instructions are the result of questions by the jury. Considering these differences, I would not conclude that the analysis set forth in *Kitchens* applies to supplemental instructions requested by the jury.

Instead, I would continue to apply our well developed framework governing the waiver of *Golding* review of supplemental instructions, as set forth in *State* v. *Foster*, 293 Conn. 327, 340–41, 977 A.2d 199 (2009), and *State* v. *Whitford*, 260 Conn. 610, 631–32, 799 A.2d 1034 (2002). These cases, read together, stand for the proposition that a defendant waives *Golding* review of a claimed impropriety in a supplemental instruction only when he or she has *requested* a supplemental instruction and affirmatively acquiesces to the language of the instruction as given. See *State* v. *Foster*, supra, 340–41 (*Golding* review was deemed waived when defense counsel "requested that the trial court remind the jury of its obligation to determine that the defendant was at the crime scene before it could find the defendant guilty. The court proposed, and defense counsel offered no objection to, a supplemental instruction that essentially repeated a portion of its initial alibi instruction."); *State* v. *Whitford*, supra, 631–32 (*Golding* review waived when defense counsel raised concern about initial instruction, trial court proposed supplemental instruction and defense counsel agreed that proposed instruction would be adequate); see also *State* v. *Holness*, 289 Conn. 535, 541, 958 A.2d 754 (2008) (*Golding* review waived when defense counsel requested limiting instruction and affirmatively agreed to instruction given).

In the present case, the defendant did not request the supplemental instruction; it was given in response to a question from the jury. This distinction is significant. A defendant's request for an instruction indicates that the defendant is aware of a potential problem and, there-

fore, any acquiescence to a proposed solution to that problem may give rise to an inference that the defendant knowingly and intentionally has waived any constitutional challenge thereto. See *State* v. *Hafford*, 252 Conn. 274, 295, 746 A.2d 150 ("[a] waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege . . . [which] must depend, in each case, upon the particular facts and circumstances surrounding that case" [internal quotation marks omitted]), cert. denied, 531 U.S. 855, 121 S. Ct. 136, 148 L. Ed. 2d 89 (2000). Moreover, in the present case, the trial court failed to provide a copy of the initial jury instructions or to conduct a charging conference concerning those instructions, and there is no indication in the record that the defendant ever assented to those instructions. Cf. *State* v. *Foster*, supra, 293 Conn. 342 (noting that "[i]n fact, defense counsel in the present case not only failed to object to the court's supplemental instruction but also expressed his satisfaction with the trial court's initial instructions"). Indeed, in the present case, there is nothing in the record to indicate that defense counsel was aware of the alleged instructional improprieties. Therefore, consistent with this court's well established precedents, I would conclude that the defendant did not waive *Golding* review of his claim that the jury instructions were constitutionally deficient.[6]

Accordingly, I dissent.

---

[6] The sole certified question on appeal to this court is: "Did the Appellate Court properly determine that the defendant waived his claim that the jury instructions were constitutionally deficient?" *State* v. *Akande*, 290 Conn. 918, 919, 966 A.2d 237 (2009). Accordingly, I decline to review the state's alternate ground for affirmance that it was not reasonably possible that the jury was misled by the improper definition of material fact. See *State* v. *Hammond*, 257 Conn. 610, 614–15 n.9, 778 A.2d 108 (2001) (declining to review alternate ground for affirmance that was not certified question for appeal). Instead, I would reverse the judgment of the Appellate Court and remand the case to that court for consideration of the defendant's claim pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40.

PALMER, J., dissenting. I agree with all of the substantive points that Justice Katz raises in her dissent. For the reasons set forth therein, as well as for the reasons set forth in her concurrence in *State* v. *Kitchens*, 299 Conn. 447, 500, 10 A.3d 942 (2011) (*Katz, J.*, concurring), and in my concurrence in *Kitchens*; id., 530 (*Palmer, J.*, concurring); I also dissent.