## STATE OF CONNECTICUT *v.* PARASURAMA RABINDRANAUTH
## (AC 33345)

Beach, Sheldon and Borden, Js.

Argued September 13, 2012—officially released January 15, 2013

*Norman A. Pattis*, for the appellant (defendant).

*Bruce R. Lockwood*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Patrick J. Griffin*, senior assistant state's attorney, for the appellee (state).

BEACH, J. The defendant, Parasurama Rabindra-nauth, appeals from the judgment of conviction, following a jury trial, of murder in violation of General Statutes § 53a-54a. The defendant claims that (1) the court's supplemental instructions to the jury in response to a note misled the jury, (2) the court abused its discretion in not admitting into evidence information about the victim's prior arrests and a photograph purportedly depicting the victim and (3) the court abused its discretion in precluding the testimony of an expert witness on the topic of gang violence. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In 2002, the defendant began dating Yashoda Ramlal and the two became engaged to be married in 2003. In 2006, Ramlal gave birth to a daughter. Thereafter, the relationship between the defendant and Ramlal deteriorated. Ramlal ended the engagement, moved out of the couple's home on Elliott Avenue in Waterbury and moved, along with her daughter, into a three-family house on Baldwin Street in Waterbury in which members of Ramlal's family, including her cousin, the victim, also lived.

On the evening of January 3, 2009, while Ramlal was in her bedroom, she telephoned the defendant. She inquired whether the defendant had finished repairing the Elliott Avenue residence so that the second floor could be rented out. The defendant responded that he had found a tenant and had collected a security deposit. Ramlal became upset because she wanted to take part in the process of interviewing prospective tenants. An argument ensued during which the defendant became angry, raised his voice and threatened Ramlal.

The victim, who was like a brother to Ramlal, was close by when the telephone call was made and knew

that Ramlal had been talking to the defendant. The victim then telephoned the defendant and asked him, in a calm voice, why he had yelled at and threatened Ramlal. After the call ended, the victim was upset and told Ramlal that the defendant had threatened him and that the defendant "doesn't know who he's messing with."

After the telephone call ended, the defendant loaded a revolver. He drove to the Baldwin Street residence and knocked on the back door, which led to the kitchen. Ramlal's brother, who was in the kitchen at the time, opened the door. He went to his bedroom from where he saw the defendant, who was standing in the kitchen, pull a gun out of his sweatshirt and shoot the victim. Then he heard the defendant say to the victim, "What are you going to do now?" At no time did Ramlal's brother see the victim argue or fight with the defendant.

The Waterbury police investigated the homicide. After being informed that the defendant was scheduled to board a flight in Miami, Florida on January 7, 2009, Waterbury police officers flew to Miami and arrested the defendant in the airport; the defendant was in possession of an airplane ticket to Trinidad. Following his arrest, the defendant made a voluntary statement to the police that, after his telephone call with the victim, he loaded a gun, went to the Baldwin Street address and shot the victim.

Following a jury trial, the defendant was convicted of murder and sentenced to forty-five years incarceration. This appeal followed.

I

The defendant first claims that the court inadequately responded to a note from the jury requesting further guidance. The defendant acknowledges that he did not preserve the issue at trial and accordingly seeks to

prevail under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine.

By way of a substitute information, the state charged the defendant with one count of murder. The court instructed the jury on murder. The court also instructed the jury, at the defendant's request, on self-defense and the lesser included offenses of manslaughter in the first degree with a firearm, manslaughter in the second degree with a firearm and criminally negligent homicide. The defendant does not raise any claim on appeal regarding the initial charge. Following an off the record charging conference, the court asked counsel if there were any additional considerations. Counsel for the defendant responded: "No, Your Honor."

A few minutes after the jury was sent to deliberate, the court received a note from the foreperson. The court responded on the record: "All right. The court has received a note from the foreperson. . . . It says as follows: 'Define charges: murder, manslaughter one, manslaughter two, criminal negligence, self-defense.' What I propose to do is to have them come out and inform them that there's only one count in the information, which is murder. And that they cannot get to any of the lesser included offenses until they have first reached a unanimous decision on murder. And inform them since it asks to define them, what I will read to them is the statute which defines the offense. And that's how the court proposes to handle the matter." At this point, lead counsel for the defendant asked to be excused on account of illness and suggested that his cocounsel would continue to represent the defendant. The court granted the request.

The court then stated: "All right. We're ready for the jurors. So let me—just so it's clear then, the defendant is charged with murder, the statute defining offense reads in pertinent part as follows: A person is guilty of

murder when with intent to cause the death of another person, he causes the death of such person. We'll take it from there." Once the jury returned to the courtroom, the court instructed the jury as follows: "All right. I've received a note signed by the foreperson. The note reads as follows: 'Define charges: murder, manslaughter one, manslaughter two, criminal negligence, self-defense.' In response, the defendant is charged with one count of murder. What I will then define for you is the statutory definition of murder. You cannot even reach any of the other, which are lesser included offenses. The law permits instructions on those and so they were given as requested. However, you cannot reach those, and if I weren't clear in my instructions it's a series of steps. And you absolutely cannot reach the lesser included offenses until you have reached a unanimous decision on the charge of murder, because the defendant stands charged with one count, murder. The defendant is charged with murder. The statute defining this offense reads in pertinent part as follows: A person is guilty of murder when with intent to cause the death of another person, he causes the death of such person. And that's the statutory definition. And with that return. Just a reminder, everyone must be present when you are deliberating."

## A

We first address the issue of waiver. The state argues that the defendant's claim fails because he implicitly waived this claim after the court expressly drew the parties' attention to its intended response to the jury, invited comment and apparently was amenable to exceptions. We do not agree.

Our Supreme Court has held that "when the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding

changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal. Such a determination by the reviewing court must be based on a close examination of the record and the particular facts and circumstances of each case." *State* v. *Kitchens*, 299 Conn. 447, 482–83, 10 A.3d 942 (2011); see also *State* v. *Akande*, 299 Conn. 551, 11 A.3d 140 (2011) (applying *Kitchens* analysis to supplemental jury charge). "In making these determinations, this court applies plenary review." *State* v. *Thomas W.*, 301 Conn. 724, 734, 22 A.3d 1242 (2011).

In this case, the record indicates that the court informed counsel of its proposed instructions and then instructed the jury accordingly. Because the record contains no indication that the trial court solicited comments from counsel or that counsel affirmatively accepted the proposed instructions, we conclude that a waiver sufficient to satisfy *Kitchens* has not occurred. We need not address, in the context of a note, whether a copy of supplemental jury instructions must be given in advance to counsel[1] for there to be an effective waiver or whether, in this case, the defendant's counsel had adequate time to review those instructions. Although waivers perhaps may occur in the context of responses

---

[1] We note that in *State* v. *Akande*, supra, 299 Conn. 551, where the Supreme Court first applied *Kitchens* to supplemental instructions, the facts were quite different from those in the present case. In *Akande*, the jury sent a question at 4:25 p.m., and the court was scheduled to be in session the next day. The court was able, therefore, without disruption to the jury's deliberation process, to make copies of what it already had submitted to the jury in its initial instructions and to give counsel copies of its intended response to the note to review overnight. Id., 558. In the present case, the jury's deliberations began Friday afternoon, and the jury's question was submitted to the court at 3:07 p.m. on the same day. Thus, if the court in this case had submitted written proposed instructions to counsel, it might have disrupted the jury's deliberations.

to notes when not all of the formal *Kitchens* require-
ments have been met fully, depending on the exigencies
of the circumstances, the facts of this case do not sup-
port a conclusion of waiver.

B

We turn, then, to the merits of the defendant's claim.
We conclude that any error in the court's supplemental
instruction was harmless and thus the defendant's claim
does not satisfy the fourth prong of *State* v. *Golding*,
supra, 213 Conn. 239–40.[2] Any error in an instruction,
even one of constitutional dimension, "is harmless if,
viewed in the context of the charge as a whole, there
is no reasonable possibility that the jury [was] misled."
(Internal quotation marks omitted.) *State* v. *Vega*, 36
Conn. App. 41, 45, 646 A.2d 957 (1994).

Although the court did not give a supplemental
instruction to the jury on self-defense, there is no rea-
sonable possibility that the jury was misled. There has
been no claim of error in the principal instructions to
the jury. The court defined the elements of murder
and explained that the jury could consider the lesser
included offenses only if it first unanimously found the
defendant not guilty of murder. After instructing on the
lesser included offenses, the court turned to the defense
of self-defense.

[2] Under *Golding*, "a defendant can prevail on a claim of constitutional
error not preserved at trial only if all of the following conditions are met:
(1) the record is adequate to review the alleged claim of error; (2) the claim
is of constitutional magnitude alleging the violation of a fundamental right;
(3) the alleged constitutional violation clearly exists and clearly deprived
the defendant of a fair trial; and (4) if subject to harmless error analysis,
the state has failed to demonstrate harmlessness of the alleged constitutional
violation beyond a reasonable doubt. In the absence of any one of these
conditions, the defendant's claim will fail. The appellate tribunal is free,
therefore, to respond to the defendant's claim by focusing on whichever
condition is most relevant in the particular circumstances." (Emphasis omit-
ted.) *State* v. *Golding*, supra, 213 Conn. 239–40.

The court clearly instructed toward the end of the charge that, "if you find that the state has proved beyond a reasonable doubt each element of a crime to which self-defense applies, you must then go on to consider whether or not the defendant acted in self-defense. In this case you would consider the defense in connection with all of the offenses I mentioned." The court proceeded to charge extensively on self-defense and its exceptions.

Within minutes after the jury retired to deliberate, it sent the note in question, which requested additional instructions on various issues, including self-defense. Again, the court's initial instruction had included a lengthy instruction on self-defense, including more than once the elements of self-defense, the state's burden to disprove self-defense, the defendant's bearing no burden of proof and self-defense as a complete defense to the crimes. Although it may be true in general that supplemental charges enjoy "special prominence in the minds of the jurors because [they are] fresher in their minds when they resume deliberation"; (internal quotation marks omitted) *State* v. *Williams*, 199 Conn. 30, 41, 505 A.2d 699 (1986); in this case the supplemental charge occurred within minutes of a lengthy and uncontested instruction on self-defense. It is most unlikely that the supplemental instruction caused the jury to disregard self-defense in light of the court's lengthy self-defense instruction and the fact that self-defense was highlighted to the jury in the defendant's testimony and throughout defense counsel's closing arguments.

The jury did not ask for additional reinstruction or express any further confusion on the matter, and thus we can presume that the court's supplemental instruction reasonably satisfied the concerns raised by the jury in the note. See *State* v. *Helmedach*, 125 Conn. App. 125, 136–37, 8 A.3d 514 (2010) (where jury did not express further confusion or request additional instruction after

court's response to note, we can presume additional instructions alleviated any confusion jury may have had), aff'd, 306 Conn. 61, 48 A.3d 664 (2012).

Additionally, the evidence of the defendant's guilt was overwhelming. Ramlal, who was next to the victim when he telephoned the defendant, testified that the victim talked in a calm voice to the defendant and did not threaten him. Ramlal's brother gave an eyewitness account of the shooting and testified that, prior to the shooting, the defendant and the victim did not speak to each other and "didn't come together," and that the victim's hands were by his side. The defendant gave a voluntary statement to the police, which was admitted as a full exhibit at trial, in which he stated: "I was so mad at [the victim]. I pointed the gun at [his] chest and I pulled the trigger only once." During cross-examination, the defendant stated that after he talked with the victim on the telephone he loaded a gun, not out of self-defense but because he "wanted to," and that he took the gun with him to the Baldwin Street residence in order to scare the victim. He further admitted that the victim did not stop him from leaving the kitchen and that although he was free to leave, he did not. He further stated that the victim did not come at him, grab him or injure him in any way, but rather was standing a few feet away when the defendant shot him.

The defendant alternatively seeks to prevail under the plain error doctrine. See Practice Book § 60-5. We decline to apply the plain error doctrine because the case does not present an extraordinary situation requiring relief from manifest injustice. See State v. Gamble, 119 Conn. App. 287, 291 n.2, 987 A.2d 1049, cert. denied, 295 Conn. 915, 990 A.2d 867 (2010).

II

The defendant next claims that the court erred in not admitting as evidence (1) a copy of a photograph from

the victim's MySpace page purportedly depicting him posing with guns and (2) statements allegedly made by the victim to the defendant in which he boasted about having been charged with attempted murder. He argues that the court's ruling was erroneous because the sole defense was self-defense and the evidence was crucial to show the defendant's state of mind and fear of the victim. We are not persuaded.

"The trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *Martinez*, 295 Conn. 758, 769–70, 991 A.2d 1086 (2010).

A

During his cross-examination of Ramlal, defense counsel attempted to enter into evidence a copy of a photograph allegedly depicting the victim wearing a mask and holding weapons. The court sustained the state's objection to the admission of the photograph as a full exhibit. In so ruling, the court stated: "Nothing has been established as to who is in the photo."

After the state rested, it filed a motion in limine, seeking to preclude the defendant from admitting the photograph into evidence. In granting the motion in limine, the court stated: "[I]t definitely is not a photograph . . . it appears to be a copy of something. I don't know if it's a copy of something that was on MySpace . . . ." The court further stated that the photograph "cannot be identified based on what was shown to the court as to who is in the photo [and] where it came

from, but more importantly, it's not even available for anyone to verify the information."

"Photographic evidence is admissible if it has a reasonable tendency to prove or disprove a material fact in issue or shed some light upon some material inquiry. . . . Verification of a photograph is a preliminary question of fact to be determined by the trial court. . . . [T]he trial court has wide discretion in admitting photographic evidence and its determination will stand unless there has been a clear abuse of that discretion." (Citations omitted; internal quotation marks omitted.) *State v. Walker*, 215 Conn. 1, 6, 574 A.2d 188 (1990).

We have viewed the photograph, which was marked as defendant's exhibit B for identification. The photograph is grainy, distorted and most of the subject's face is covered. The photograph does not have any features that would identify it as being from the MySpace website or being from a MySpace page of the victim. The original image was not available at the time of trial. The court stated that nothing was established as to whom the photograph depicted. Under the facts of this case, the court did not abuse its discretion in precluding the admission of the photograph. See C. Tait & E. Prescott, Connecticut Evidence (4th Ed. 2008) § 11.17.1, p. 673 ("[a] photograph is admissible even if 'not very good' provided its subject is discernible and not distorted").

B

The defendant next argues that the court erred in precluding him from testifying that the victim previously had been arrested in New York for attempted murder and that the victim boasted to the defendant about that arrest. The defendant suggests that the evidence was relevant to his state of mind at the time of the shooting and helped to explain the defendant's

attempt to flee to Trinidad after the shooting. We do not agree.

During argument on the state's motion in limine seeking to preclude the evidence, the defendant's counsel stated that he had evidence that the victim, while threatening the defendant, informed the defendant that the victim had been arrested for attempted murder. He argued that the threat was admissible because it was a violent or bad act perpetrated against the defendant. In ruling on the motion in limine, the court stated that it had before it only statements by the defendant that the victim had told the defendant that he had been arrested for attempted murder. The court ruled that the defendant could not introduce evidence of this prior arrest, but expressly did not rule regarding any threats the victim may have made to the defendant. The court did not rule, in the course of deciding the motion in limine, on the admissibility of a threat. The court stated: "[A]n arrest in and of itself never comes in unless under very strict circumstances. . . . [A]ll that . . . is before the court is the defendant making the statement that the deceased made a statement concerning being arrested. . . . I'm not making any ruling at this point concerning anything that the defendant might say because of those things. . . . [W]ithout any more facts or evidence other than the defendant saying that at some point in time the deceased [victim] said to him [that he had been arrested], then that's really all that the court has before it."

In these circumstances, the court did not abuse its discretion in precluding the defendant from entering into evidence the victim's arrest in New York for attempted murder. "Evidence of prior bad acts by the victim perpetrated *on the defendant* may be admissible to show the defendant's state of mind." (Emphasis added.) *State* v. *Collins*, 68 Conn. App. 828, 836, 793 A.2d 1160, cert. denied, 260 Conn. 941, 835 A.2d 58 (2002). The defendant offered no evidence that the specific acts leading to the victim's arrest in New York

involved the defendant, and, the evidence by itself is not admissible. See *State* v. *Smith*, 222 Conn. 1, 18, 608 A.2d 63 ("deceased's violent character may not be established by evidence of specific violent acts, other than convictions"), cert. denied, 506 U.S. 942, 113 S. Ct. 383, 121 L. Ed. 2d 293 (1992); *State* v. *Abreu*, 106 Conn. App. 278, 287, 941 A.2d 974 (specific acts leading to victim's arrest not admissible because acts did not involve victim and defendant), cert. denied, 286 Conn. 919, 946 A.2d 1249 (2008).

### III

The defendant next claims that the court erred in precluding testimony of the defendant's expert on the subject of gangs and gang behavior. We disagree.

In March, 2009, the state filed a discovery request in which it sought the names and addresses of all witnesses the defendant intended to call in his case-in-chief, other than the defendant. On December 1, 2010, the court ordered the parties to comply with all outstanding discovery requests and allowed the parties sixteen days from the date of the order in which to do so. More than one month later and one day before the commencement of evidence, on January 3, 2011, the defendant filed a notice of an expert witness, Ronald Nihill, who would testify about gang behavior.

The state filed a motion in limine seeking to preclude the defendant from introducing the testimony of Nihill. The state argued, inter alia, that the defendant failed to comply with the court's December 1, 2010 order or to offer a legitimate reason for the late disclosure, that the late disclosure was prejudicial and that the court should prohibit the defendant from introducing the testimony of the expert witness pursuant to Practice Book § 40-5. The state also argued that Nihill's proposed testimony amounted to generalizations about the violent tendencies of gang members, which, by itself, was not relevant. In granting the state's motion, the court reasoned that the defendant did not disclose Nihill until

January 3 and was subject to sanctions pursuant to § 40-5. The court further noted that the defense had not disclosed any evidence regarding the victim's involvement in a gang or any other information necessary to lay a proper foundation for the introduction of Nihill's expert testimony.

The defendant argues that Nihill's expert testimony should have been admitted because there was a foundation for it. The defendant does not claim that the court's alternative ground for precluding Nihill's testimony, namely, that it was a sanction for late disclosure, was improper. The court did not abuse its discretion in precluding Nihill's expert testimony as a sanction for late disclosure. See *State* v. *Tutson*, 278 Conn. 715, 741, 864 A.2d 666 (2006) (applying abuse of discretion standard of review). Practice Book § 40-5 provides in relevant part: "If a party fails to comply with disclosure as required under these rules, the opposing party may move the judicial authority for an appropriate order. The judicial authority hearing such a motion may enter such orders . . . as it deems appropriate, including . . . (4) Prohibiting the noncomplying party from introducing specified evidence . . . ." In the circumstances here, we need not consider whether any other reasons justified excluding Nihill's proposed testimony.

The judgment is affirmed.

In this opinion the other judges concurred.