STATE OF CONNECTICUT *v.* JARED CHARLES
(AC 33840)

Alvord, Espinosa and Sheldon, Js.

Argued January 6—officially released March 13, 2012

*Darcy McGraw*, assistant public defender, for the appellant (defendant).

*Raheem L. Mullins*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Anne Mahoney*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Jared Charles, appeals from the judgment of conviction, rendered after a jury

trial, of murder in violation of General Statutes § 53a-54a, carrying a pistol without a permit in violation of General Statutes § 29-35, criminal possession of a pistol in violation of General Statutes § 53a-217c and possession of narcotics in violation of General Statutes § 21a-279 (a). On appeal, the defendant challenges the trial court's jury instructions on the charge of murder. Because we conclude that the defendant expressly waived two of his claims and implicitly waived the remaining two claims, we affirm the judgment of the trial court.

The jury reasonably could have found the following facts from the evidence presented at trial. In the late afternoon of September 25, 2004, the victim, Dennis Faniel, and his cousin, Jayquan Faniel, were riding bicycles in a residential area on Deerfield Avenue in Hartford. The defendant, who was close friends with the victim, was driving in the area, and the victim signaled for him to stop. The defendant parked his car a short distance from where the victim and Jayquan Faniel were then standing and exited his vehicle. While Jayquan Faniel remained with the bicycles at the end of a driveway, the defendant and the victim began talking and walked up that driveway, toward the rear of a house. The victim demanded a cellular telephone that the victim's brother, then incarcerated, had entrusted to the defendant. The victim's brother had instructed the defendant to keep it away from the victim. The cellular telephone was valuable because it was used in the illegal drug business and contained the contact numbers of numerous customers. When the defendant refused to give it to the victim, the two men began arguing, and the victim made a fist with his right hand as if preparing to hit the defendant. At that point, Jayquan Faniel moved away from the bicycles. The defendant fired one gunshot, and the victim was hit in the abdomen with

a bullet from a nine millimeter semiautomatic firearm. He later died from his injuries.

The defendant fled the scene with a silver gun in his hand. Jayquan Faniel ran to the victim, who had fallen to the ground on his knees, and took the victim's .38 caliber revolver from him. He chased the defendant and fired five gunshots at him. After he failed to hit the defendant, Jayquan Faniel threw the revolver in a trash can behind one of the neighborhood houses and went home. The defendant, while being pursued by Jayquan Faniel, caught his gray shirt on a fence as he jumped over the fence. He managed to slide out of the shirt and left it behind. The police later retrieved the .38 caliber revolver, the gray shirt with cocaine in one of its pockets and a cellular telephone within the area traveled by Jayquan Faniel and the defendant. The police did not find a nine millimeter weapon.

During the investigation, the police interviewed a witness to the incident. Natasha Walker, a former girlfriend of the victim, was standing outside of her grandfather's house on Deerfield Avenue when she saw the victim and Jayquan Faniel riding up the street on their bicycles. She also saw the defendant, wearing a gray shirt, approach them when they left their bicycles at the end of the driveway. Because the defendant and the victim walked to the rear of the yard, she did not see the shooting but she did hear the gunshot. She stated that Jayquan Faniel was still at the end of the driveway with the bicycles when the gun was fired. She then saw the defendant run from behind the house with a gun in his right hand, and she heard an additional four or five gunshots shortly after the defendant and Jayquan Faniel fled the scene.

The defendant was arrested and charged in connection with the shooting. After two days of evidence during the defendant's trial, the parties rested. The jury

reached its verdict, which was accepted by the court, and the defendant was sentenced to forty-eight years of incarceration. This appeal followed.

## I

The defendant's first two claims are that the trial court improperly failed to instruct the jury, sua sponte, on self-defense and the lesser included offense of manslaughter.[1] He argues that those instructions were warranted by the evidence at trial and that the court's failure to give them deprived him of his constitutional right to a fair trial. However, as indicated in this opinion, defense counsel expressly stated to the court that he did not want an instruction on self-defense or any form of manslaughter. Accordingly, we conclude that the defendant has waived these claims on appeal.

On Wednesday, June 20, 2007, before evidence commenced on the second day of trial, the court asked counsel whether each side had received a copy of the court's initial draft of the jury instructions. After both counsel responded in the affirmative, the court invited the parties to submit their own written jury charge requests. Later that same day, after the defendant had testified and the defense had rested, but before the state's rebuttal witness took the witness stand, the following discussion took place outside of the presence of the jury. The court asked if counsel would be ready for the charging conference the next day and stated: "Now, you can submit stuff in writing or you can just bring along your thoughts with citations. You have a copy of the court's initial draft. Obviously, there are some things we have to add to that. Is there a claim of self-defense?" When defense counsel answered, "I would say no," the court stated that counsel should discuss the matter with his client. At the end of the

---

[1] The defendant does not specify which degree of manslaughter should have been included in the charge to the jury.

day, after all of the evidence had been presented, the court excused the jurors and told them to report back to the courtroom the following Monday, June 25, 2007. The court again spoke to counsel about the draft instructions: "Please go through the draft tonight. . . . Let me know what you want added or subtracted. Offhand, we're going to need, obviously, an instruction on expert witnesses, police officers, prior conviction of a witness, prior conviction of the defendant, one prior misconduct [for] the defendant. I don't know what else. It doesn't sound like self-defense to me, but I may be incorrect. I'd like to have you talk to your client about it. My understanding of the evidence is that he testified he and the victim were struggling over a revolver; the victim was shot by a semiautomatic handgun. . . . Well, think it over, [defense counsel]. It's up to you what you want to do."

Before the jury entered the courtroom on Monday, June 25, 2007, the court asked counsel if they had received the final draft of the jury instructions on Friday, June 22, 2007, at 4:45 p.m. Defense counsel responded in the affirmative. The court then gave the following summary of the matters discussed at the previous charging conference: "As far as the charge conference is concerned, draft one was handed out by the court about 10 o'clock on June 20, and we discussed whether or not there was going to be a request for self-defense. The next day, on [June 21], we had a charge conference, and [the] defendant indicated he did not want a charge on self-defense. Concerning the testimony of the defendant, I certainly can understand that as a tactical decision. And we brought the defendant in that day even though there was no scheduled court so [defense counsel] could confer with him. Neither side wanted motive. We discussed consciousness of guilt, which is in there. The discussion was between 2:20 and 3:10 in the afternoon. Also, neither side wants

any lesser [included offense]. Then on [June 22, 2007], you got a copy [that] was revised, draft two, which was essentially correct except for a few typos. The third version of that came out at 2:45 p.m., and I revised the typos and things, and the final edition [that] I have on my bench came out at 4:45 on Friday afternoon. There's really no substantive changes to the third version." The court then asked counsel if there were any "objections or additions or subtractions" with respect to its charging conference summary. No objections or suggestions were made by counsel, and the jury then entered the courtroom to listen to closing arguments.

During his closing argument, defense counsel told the jury: "[The defendant] never said anything about self-defense. That's the state's attorney putting words in his mouth. He gave a statement to the police. Never in that statement did he say it was self-defense. In that statement, just like he testified in front of you, he said, I heard a shot go off. The only way it could have come from is from Jayquan, which is totally consistent with the angle." After the state's rebuttal argument, the court charged the jury with the instructions agreed upon by the parties. Each juror had a copy of the written jury instructions as the court read them, and the court stated that the jurors could keep their copies throughout their deliberations. After the court completed its charge to the jury, and outside of the presence of the jury, the court asked counsel whether they had any exceptions to the charge as given. Defense counsel and the prosecutor both responded in the negative.

The defendant now claims that the court should have instructed the jury, sua sponte, on self-defense and the lesser included offense of manslaughter, and he requests our review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[2] The state responds that he expressly waived those claims at trial.

[2] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met:

"A defendant in a criminal prosecution may waive one or more of his or her fundamental rights. . . . [I]n the usual *Golding* situation, the defendant raises a claim on appeal [that], while not preserved at trial, at least was not waived at trial. . . . [A] constitutional claim that has been waived does not satisfy the third prong of the *Golding* test because, in such circumstances, we simply cannot conclude that injustice [has been] done to either party . . . or that the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial . . . . This court has stated that among the rights that may be waived by the action of counsel in a criminal proceeding is the right of a defendant to proper jury instructions." (Citations omitted; internal quotation marks omitted.) *State* v. *Kitchens*, 299 Conn. 447, 467, 10 A.3d 942 (2011).

"It is well established in Connecticut that unpreserved claims of improper jury instructions are reviewable under *Golding* unless they have been induced or implicitly waived. The term induced error, or invited error, has been defined as [a]n error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the erroneous ruling. . . . This court has found induced error undeserving of appellate review in the context of a jury instruction claim when the defense has affirmatively requested the challenged jury instruction . . . or has encouraged or prompted the court to refrain from giving an instruction that arguably should have been given." (Citations omitted; internal quotation

(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

marks omitted.) Id., 468–69. "[T]o allow [a] defendant to seek reversal [after] . . . his trial strategy has failed would amount to allowing him to induce potentially harmful error, and then ambush the state [and the trial court] with that claim on appeal." (Internal quotation marks omitted.) *State* v. *Gibson*, 270 Conn. 55, 67, 850 A.2d 1040 (2004).

In the present case, the defendant's first two claims fail under the third prong of *Golding*.[3] The record clearly reflects that he expressly waived his right to challenge the failure of the court to instruct the jury, sua sponte, on self-defense and the lesser included offense of manslaughter. Defense counsel induced the unpreserved error of which he now complains by telling the court that he did not want an instruction on self-defense or any lesser included offense, by telling the jury during his closing argument that the defendant never claimed that he acted in self-defense,[4] and by failing to take any exception to the jury charge as given by the court. Accordingly, we do not reach the merits of the defendant's claims.[5]

---

[3] With respect to the second prong of *Golding*, we also note that a defendant must assert a claim of self-defense and present evidence to warrant a jury instruction on the defense in order to implicate a constitutional right. *State* v. *Solomon*, 103 Conn. App. 530, 535, 930 A.2d 716 (2007). Further, our Supreme Court does not recognize the right to have a jury charged on lesser included offenses to be one of constitutional dimension. See *State* v. *Jacobowitz*, 194 Conn. 408, 413, 480 A.2d 557 (1984).

[4] Furthermore, it would be inappropriate for the trial court to charge the jury, sua sponte, on a theory that is contrary to the defendant's stated position. See *State* v. *Jeffrey*, 220 Conn. 698, 717–19, 601 A.2d 993 (1991), cert. denied, 505 U.S. 1224, 112 S. Ct. 3041, 120 L. Ed. 2d 909 (1992); *State* v. *Williams*, 44 Conn. App. 231, 239, 689 A.2d 484, cert. denied, 240 Conn. 918, 692 A.2d 815 (1997).

[5] The defendant also seeks review of these claims under the plain error doctrine. See Practice Book § 60-5. "It is well settled . . . that when a right has been affirmatively waived at trial, we generally do not afford review under either *Golding* or the plain error doctrine . . . ." (Internal quotation marks omitted.) *State* v. *Bharrat*, 129 Conn. App. 1, 17, 20 A.3d 9, cert. denied, 302 Conn. 905, 23 A.3d 1243 (2011).

## II

The defendant's remaining two claims are that the trial court (1) improperly instructed the jury on both general intent and specific intent with respect to the murder charge and (2) improperly instructed the jury with respect to drawing inferences from circumstantial evidence as applied to the element of intent for the murder charge. The defendant took no exception to these challenged instructions at trial, and he consequently requests our review under *Golding*. The state responds that the defendant implicitly waived these unpreserved challenges because he acquiesced in the challenged instructions after being provided with a meaningful opportunity to review them.

As previously discussed, the defendant received the first draft of the court's proposed jury instructions on Wednesday morning, June 20, 2007, which was the second day of trial. Later that same day, the court instructed counsel to review the charge that evening and to inform the court as to suggested additions or subtractions. On the next scheduled day of trial, which was Monday, June 25, 2007, the court summarized on the record the charging conference held on Thursday, June 21, 2007. During the summary, it stated that the fourth revised and final version of the jury instructions had been made available to counsel at 4:45 p.m. on Friday, June 22, 2007. The court asked if the parties had any objections or additions to its summary, and none were made by counsel. The court then read the approved instructions to the jurors. Neither the state nor the defendant took any exceptions to the charge as given.

In *State* v. *Kitchens*, supra, 299 Conn. 482–83, our Supreme Court held that "when the trial court provides counsel with a copy of the proposed jury instructions,

allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal." Moreover, "[a]ctual discussion of the instruction later challenged is not required." *State* v. *Mungroo*, 299 Conn. 667, 676, 11 A.3d 132 (2011).

Here, defense counsel had a meaningful opportunity to review the court's written instructions and to object to any language therein. He proposed no instructions of his own and took no exceptions to the charge as given. Because defense counsel's actions at trial constitute an implicit waiver of the challenged instructions under these circumstances, the defendant's remaining two claims fail under the third prong of *Golding*.[6]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] The defendant also seeks review of these two claims under the plain error doctrine. See Practice Book § 60-5. The finding of a valid waiver, however, precludes a finding that the challenged instructions constitute plain error because "a valid waiver means that there is no error to correct." *State* v. *Kitchens*, supra, 299 Conn. 474 n.18.