******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* EDGAR OPIO-OGUTA
(AC 34684)

Alvord, Sheldon and Harper, Js.

*Argued February 4—officially released September 23, 2014*

(Appeal from Superior Court, judicial district of
Hartford, geographical area number fourteen,
Randolph, J.)

*Katherine C. Essington*, assigned counsel, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Robert Mullins*, senior assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Edgar Opio-Oguta, appeals from the judgment of conviction, rendered after a jury trial, of criminal violation of a protective order in violation of General Statutes § 53a-223 and disorderly conduct in violation of General Statutes § 53a-182 (a) (1). On appeal, the defendant argues that the court (1) improperly enlarged the offense of criminal violation of a protective order by including uncharged misconduct in its jury charge; (2) improperly failed to charge the jury that criminal violation of a protective order is a general intent crime; and (3) abused its discretion in admitting into evidence a recording of the victim's 911 telephone call. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The victim met the defendant in May, 2010. The victim moved in with the defendant and became the defendant's girlfriend for two or three months. After the victim and the defendant separated, the defendant continued to call the victim and send her text messages. In June, 2010, prior to the end of their relationship, the victim obtained a protective order requiring the defendant to stay away from the victim's residence and not to contact her.[1] After the protective order was issued, the defendant continued to call the victim and her children. The victim did not report these instances to the police, however, because she did not feel physically threatened by them. In November, 2010, the victim moved to a residence in Hartford with her boyfriend, Chol Mangor, and his cousin, Ring Yak.

On the afternoon of January 8, 2011, the victim and Mangor were napping in the bedroom of their residence, and Yak and a few of his friends were in the living room, when the defendant came into the bedroom with a beer bottle in his hand and asked to speak to Mangor. When Mangor told the defendant to leave, the defendant threw the beer bottle, missing Mangor's head and hitting the wall. The victim called the police, who arrived and arrested the defendant.

The defendant was charged with criminal violation of a protective order in violation of § 53a-223 and disorderly conduct in violation of § 53a-182 (a) (1). The jury found the defendant guilty of both charges, upon which the court imposed a total effective sentence of three years incarceration, execution suspended after sixteen months, with three years of probation.[2] Additional facts will be set forth as they pertain to each claim.

I

The defendant first argues that the court improperly enlarged the offense of criminal violation of a protective order in its charge to the jury.

The following facts are relevant to this claim. Count one of the second amended long form information

alleged, in pertinent part, that "on or about January 8, 2011, at approximately 3:15 p.m., [the] defendant . . . did go to the residence of the protected party . . . and did harass her and did cause contact that did cause her annoyance and alarm, said conduct in violation of [§] 53a-223."

At the conclusion of the evidence, a charge conference took place on the record. During this conference, the court reviewed its proposed charge with counsel. The court also considered requests to charge submitted by the defendant. The court's proposed charge regarding criminal violation of a protective order did not indicate that the state had alleged that the defendant called or texted the victim in violation of the protective order, and this was not discussed during the charge conference. In the court's final charge, however, the court stated: "The state alleges that the defendant harassed the complaining witness. The state also alleges that the defendant did not stay away from the residence of the protected person, *and the state also alleges that the defendant called or texted the protected person in violation of the protective order.*" (emphasis added.)[3] The defendant argues that by including the language regarding phone calls and text messages, the court improperly enlarged the offense of criminal violation of a protective order. The state contends that although this added language potentially enlarged the offense, the evidence and instructions as a whole guided the jury to a proper verdict.

We initially note that the defendant did not object to the court's charge on criminal violation of a protective order and seeks review of this unpreserved claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine.[4] Pursuant to *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id. 239–40. Because the record in this case is adequate for review and the defendant's claim implicates his right to be sufficiently informed of the nature of the charges against him, pursuant to the federal and state constitutions; see *State* v. *Dunstan*, 145 Conn. App. 384, 395 and n.8, 74 A.3d 559, cert. denied, 310 Conn. 958, 82 A.3d 626 (2013); we will proceed to review the merits of the defendant's claim pursuant to *Golding*.

"[E]nlargement cases involve claims that the trial court expanded the state's information by instructing the jury on statutory or factual alternatives not charged

in the information. . . . It is incumbent upon the defendant in an enlargement case to demonstrate that the trial court's charge caused him unfair surprise or prejudiced him in the preparation of his defense. . . . In other words, the defendant must show that: (1) the challenged jury instructions improperly enlarged the charges brought against him; and (2) such enlargement was prejudicially harmful. The defendant's enlargement claims, like other claims that jury instructions violated a constitutional right, require us to exercise plenary review as we examine the charge as a whole to determine whether it misled the jury." (Citation omitted; internal quotation marks omitted.) *State* v. *David N.J.*, 301 Conn. 122, 158, 19 A.3d 646 (2011). "Any error in an instruction, even one of constitutional dimension, is harmless if, viewed in the context of the charge as a whole, there is no reasonable possibility that the jury [was] misled." (Internal quotation marks omitted.) *State* v. *Rabindranauth*, 140 Conn. App. 122, 129, 58 A.3d 361, cert. denied, 308 Conn. 921, 62 A.3d 1134 (2013).

The defendant contends that he was prejudiced by the inclusion of the erroneous language in the court's charge because his defense was based on mistake or accident in that he did not know the victim was living at the address at issue, and went there to visit friends, not to see the victim. According to the defendant, evidence that he previously had tried to contact the victim in violation of the protective order was inconsistent with, and, thereby undermined, this defense. See *State* v. *Belton*, 190 Conn. 496, 503–504, 461 A.2d 973 (1983). The defendant further argues that because the court failed to grant his pretrial motion for notice of uncharged misconduct, he was unfairly surprised and prejudiced in the preparation of his defense by the inclusion of the challenged language in the court's charge.[5]

We agree with the defendant that the court improperly included the language regarding phone calls and text messages in its jury charge. We conclude, however, that this error was harmless in light of the defendant's conviction of disorderly conduct, as alleged in count two of the information. Count two alleged that "on or about the 8th day of January 2011, at approximately 3:15 p.m., in the vicinity of [the victim's residence, the defendant] did intend to cause inconvenience, annoyance and recklessly caused a risk thereof to [the victim], and engaged in violent, tumultuous, and threatening conduct toward [the victim] and Chol Mangor . . . in violation of [§] 53a-182 (a) (1)." By this conviction, the jury necessarily found that on January 8, 2011, at approximately 3:15 p.m., the defendant engaged in violent, tumultuous, and threatening conduct toward the victim and Mangor.[6] The evidence before the jury regarding the incident on January 8, 2011, was that the defendant appeared at the bedroom door of the victim's residence while she and Mangor were napping, and

threw a beer bottle, missing Mangor's head and hitting the wall. Having found that the defendant engaged in such conduct, it necessarily found that the defendant violated the protective order at the same time, place and date. See *State* v. *Padua*, 273 Conn. 138, 167–171, 869 A.2d 192 (2005) (although jury instruction improperly omitted essential element of crime, error harmless where omitted element uncontested and supported by overwhelming evidence); *State* v. *Haywood*, 109 Conn. App. 460, 471–72, 952 A.2d 84, cert. denied, 289 Conn. 928, 958 A.2d 161 (2008). When viewed in this light, we conclude that although the court improperly included the language regarding phone calls and text messages in its charge to the jury, any such error was harmless beyond a reasonable doubt. The defendant, therefore, cannot satisfy the fourth prong of *State* v. *Golding*, supra, 213 Conn. 239–40.[7]

## II

The defendant next argues that the court's charge did not sufficiently instruct the jury regarding the intent required for a conviction of criminal violation of a protective order. Specifically, he argues that the court's charge did not adequately inform the jury that criminal violation of a protective order is a general intent crime. We disagree.

The following facts are relevant to this claim. At the conclusion of the evidence, defense counsel submitted a request to charge regarding the offense of criminal violation of a protective order. The requested charge did not include language specifying that criminal violation of a protective order is a general intent crime. It did, however, indicate that "a person acts 'intentionally' with respect to conduct when his conscious objective is to engage in such conduct."[8] At the charge conference, the court reviewed its proposed charge with counsel. Defense counsel did not indicate that the court's proposed charge, which mirrored the defendant's requested charge with regard to intent, was unclear. Further, defense counsel did not object to the court's charge after it was given. In view of the foregoing, the defendant concedes that he implicitly waived his right to challenge the instruction on appeal, and, therefore, that *Golding* review is unavailable for this claim. See *State* v. *Kitchens*, 299 Conn. 447, 482–83, 10 A.3d 942 (2011). He requests, however, that this court review this claim under the plain error doctrine or, alternatively, pursuant to the exercise of our supervisory authority over the administration of justice. The state counters that the defendant's claim is not reviewable because the defendant induced the court to give the charge challenged on appeal.[9] If reviewed, the state argues that the defendant cannot prevail pursuant to the plain error doctrine or our supervisory authority.

"It is well established in Connecticut that unpreserved claims of improper jury instructions are review-

able under *Golding* unless they have been induced or implicitly waived. . . . This court has found induced error undeserving of appellate review in the context of a jury instruction claim when the defense has affirmatively requested the challenged jury instruction . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Kitchens*, supra, 299 Conn. 468–69. In *State* v. *Darryl W.*, 303 Conn. 353, 371 n.17, 33 A.3d 239 (2012), however, our Supreme Court noted the tension in our appellate case law regarding whether reversal on the basis of plain error could be available in cases where the alleged error is causally connected to the defendant's own behavior. To the extent that we consider the defendant's claim under the plain error doctrine, we are not persuaded that an error exists that is so obvious that it affects the fairness and integrity of and the public confidence in the judicial proceedings or that the court's jury charge caused the defendant to suffer manifest injustice. See *State* v. *Maskiell*, 100 Conn. App. 507, 520–21, 918 A.2d 293, cert. denied, 282 Conn. 922, 925 A.2d 1104 (2007); *State* v. *Santiago*, 100 Conn. App. 236, 254, n.10, 917 A.2d 1051, cert. denied, 284 Conn. 933, 935 A.2d 152, 153 (2007); but see *State* v. *Charles*, 134 Conn. App. 242, 250 n.5, 39 A.3d 750, cert. denied, 304 Conn. 930, 42 A.3d 390 (2012).

"[The plain error] doctrine, codified at Practice Book § 60-5, is an extraordinary remedy used by the appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. [T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . Implicit in this very demanding standard is the notion . . . that invocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review." (Internal quotation marks omitted.) *State* v. *Sanchez*, 308 Conn. 64, 77, 60 A.3d 271 (2013).

"An appellate court addressing a claim of plain error first must determine if the error is indeed plain in the sense that it is patent [or] readily discernible on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . This determination clearly requires a review of the plain error claim presented in light of the record." (Internal quota-

tion marks omitted.) Id. In addition, "[a] party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) Id.

Turning to the present case, § 53a-223 (a) provides in relevant part that "[a] person is guilty of criminal violation of a protective order when an order . . . has been issued against such person, and such person violates such order." "To prove a charge of criminal violation of a protective order under § 53a-223, the state must demonstrate that a protective order was issued against the defendant . . . and it must demonstrate the terms of the order and the manner in which it was violated. . . . Regarding the mental element of the crime, the violation of a protective order statute is not a specific intent crime. All that is necessary is a general intent that the defendant intended to perform the activities that constituted the violation." (Footnote omitted.) *State* v. *Larsen*, 117 Conn. App. 202, 208, 978 A.2d 544, citing *State* v. *Fagan*, 280 Conn. 69, 77–78, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007), cert. denied, 294 Conn. 919, 984 A.2d 68 (2009).

The defendant argues that the charge was defective because it did not specify that criminal violation of a protective order is a general intent crime, potentially leading the jury to believe that there is no mental element required in order to find the defendant guilty of criminal violation of a protective order. The court properly instructed the jury, however, that the state was required to prove beyond a reasonable doubt that the court issued a protective order against the defendant and that the defendant violated a condition of the protective order. The court also properly charged, with regard to violation of a protective order, that "a person acts intentionally with respect to conduct when his conscious objective is to engage in such conduct." The charge given was consistent with the charge requested by the defendant and the model charge found on the Connecticut Judicial Branch website.[10] Prior to the court's charge regarding the elements of criminal violation of a protective order, the court explained the differences between general intent and specific intent.[11] During its charge regarding disorderly conduct, the court noted that it previously had explained the difference between general intent and specific intent, and clarified that disorderly conduct was a specific intent crime. On the basis of the foregoing, we are not persuaded that an error exists that is so obvious that it affects the fairness and integrity of and the public confidence in the judicial proceedings or that the court's instructions caused the defendant to suffer manifest injustice. See *State* v. *Sanchez*, supra, 308 Conn. App. 77.[12]

III

The defendant's final claim is that the court improperly admitted the recording of the victim's 911 phone call into evidence. According to the defendant, admission of the 911 recording was error because it was minimally probative and highly prejudicial. We disagree.

The following facts are relevant to this claim. At trial, over the defendant's objection, the victim testified that on a date prior to trial, she met with an investigator for the state and listened to a recording of her 911 phone call to the Hartford Police Department. She testified that it was her voice on the phone call, and that no additions or deletions had been made to the recording. When the prosecutor moved to offer the recording as a full exhibit, defense counsel objected on the ground that the recording had not been authenticated. Defense counsel then stated: "And also I object as to it's very prejudicial versus probative. She's already testifying to events, and it's cumulative and superfluous to her testimony, your Honor." The court then indicated that "[o]n those grounds, it's cumulative, superfluous, she's already testified, the objection is overruled." The recording was then played for the jury.

On appeal, the defendant argues that although the victim's voice was calm when the recording began, she was screaming hysterically by the end of the call. The defendant contends that the screaming was out of proportion to what was occurring in the background, and made it sound as if the victim was being assaulted or harmed in some way. According to the defendant, because of the victim's prolonged screaming, the recording was highly inflammatory and likely to arouse the emotions of the jury.[13] The state counters that this issue was not properly preserved at trial because, although the defendant did argue that the evidence was more prejudicial than probative, he failed to inform the court of the specific objection raised on appeal. The state further argues that, if this claim is reviewed, we should conclude that the court did not abuse its discretion in admitting the recording. We conclude that the defendant properly preserved this issue at trial, but further conclude that the court did not abuse its discretion in admitting the recording of the victim's 911 phone call.

"We will make every reasonable presumption in favor of upholding the trial court's [evidentiary] ruling, and only upset it for manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did. . . . The question, moreover, is not whether the evidence is highly probative, but simply whether its probative value outweighs undue prejudice." (Citation omitted; internal quotation marks omitted.) *State* v. *Hill*, 307 Conn. 689, 700–701, 59 A.3d 196 (2013). Our Supreme Court "has identified four factors

relevant to determining whether the admission of other-wise probative evidence is unduly prejudicial. These are: (1) where the facts offered may unduly arouse the [jurors'] emotions, hostility or sympathy, (2) where the proof and answering evidence it provokes may create a side issue that will unduly distract the jury from the main issues, (3) where the evidence offered and the counterproof will consume an undue amount of time, and (4) where the defendant, having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it." (Internal quotation marks omitted.) Id., 698.

In *State* v. *Rodriguez*, 91 Conn. App. 112, 121, 881 A.2d 371, cert. denied, 276 Conn. 909, 886 A.2d 423 (2005), the defendant, who was convicted of burglarizing an occupied home, argued that the court improperly admitted into evidence a tape recording of the 911 call in the case. The woman on the recording indicated that someone was breaking into her home and expressed fear for the safety of her children. Id. We concluded in *Rodriguez* that the court did not abuse its discretion in admitting the recording into evidence, stating that "the court reasonably determined that the recording was relevant because it tended to support the fact that a burglary had occurred. Although the jury may have detected fear in the woman's voice on the recording, we cannot conclude that the recording unduly aroused the jury's emotions. A reasonable person would assume fear in the mind of a burglary victim. The recording was therefore not particularly prejudicial. Finally, the recording was not merely cumulative because the woman who made the 911 call did not testify about the contents of the call on direct examination. The prosecutor questioned her about the events leading to the call, then played the recording and questioned her about the events following the call." Id., 122–23.

Similarly, in *State* v. *Nelson*, 105 Conn. App. 393, 408, 937 A.2d 1249, cert. denied, 286 Conn. 913, 944 A.2d 983 (2008), the defendant, who was convicted of conspiracy to commit robbery in the first degree, argued that the court should not have permitted the jury to hear the 911 recording. We disagreed, stating that "[t]he 911 recording was not unfairly prejudicial; although the jury may have detected suffering and fear in [the victim's] voice, we cannot conclude that the recording unduly aroused the jury's emotions. . . . With or without the aid of a tape, a reasonable person would assume a person in [the victim's] position to be distressed." Id., 412. We further concluded that the recording was not cumulative because it presented matters not covered by the victim's testimony. Id.

As we did in *Rodriguez* and *Nelson*, we conclude that the 911 recording here was not unfairly prejudicial. Further, we disagree with the defendant's attempt to distinguish *Rodriguez* on the ground that the victim

in the present case testified in detail regarding what occurred during her 911 call, thus rendering the 911 recording superfluous or cumulative. At trial, the victim testified on direct examination regarding her motivation to call 911, and her attempt to keep people separated while she made the call.[14] She did not testify regarding the contents of the 911 call. We conclude, on the basis of the foregoing, that the court did not abuse its discretion in admitting the recording into evidence.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The protective order required, inter alia, that the defendant "[s]tay away from the home of the protected person and wherever the protected person shall reside" and to "[s]tay 100 yards away from the protected person."

[2] On count one, the court sentenced the defendant to three years incarceration, execution suspended after sixteen months, and three years of probation. On count two, the court sentenced the defendant to three months incarceration, concurrent with count one.

[3] The complete charge pertaining to criminal violation of a protective order provides: "The defendant is charged in count one with violation of a protective order. Now the statute defining this offense reads in pertinent part as follows: a person is guilty of criminal violation of a protective order when an order has been issued against such person, and such person violates such order. For you to find the defendant [guilty] of this charge, the state must prove the following elements beyond a reasonable doubt.

"The first element is that a court issued a protective order against the defendant. State's exhibit 2 is the state's offer of the protective order, and the protective order required the defendant to do the following: surrender or transfer all firearms; do not assault, threaten, abuse, harass, follow, interfere with or stalk the protected person; stay away from the home of the protected person and wherever the protected person shall reside; do not contact the protected person in any manner, including by written or electronic or telephone contact; and do not contact the protected person's home or workplace or others with whom that contact would be likely to cause annoyance or alarm to the protected person; and stay 100 yards away from the protected person.

"The second element is that the defendant violated a condition of the protective order. To violate the condition means to act in disregard of or to go against the condition. The state alleges that the defendant harassed the complaining witness. The state also alleges that the defendant did not stay away from the residence of the protected person, and the state also alleges that the defendant called or texted the protected person in violation of the protective order.

"A person acts intentionally with respect to conduct when his conscious objective is to engage in such conduct. In summary, the state must prove beyond a reasonable doubt that, one, a court issued a protective order against the defendant; and two, he violated a condition of that protective order.

"If you unanimously find that the state has proved beyond a reasonable doubt each of the elements of the crime of criminal violation of a protective order, then you shall find the defendant guilty. On the other hand, if you unanimously find that the state has failed to prove beyond a reasonable doubt one or more of the elements of the crime you shall find the defendant not guilty."

[4] The state concedes, and we agree, that because the challenged language was not included in the court's proposed charge, and was not discussed during the charge conference, the defendant has not implicitly waived this claim pursuant to *State* v. *Kitchens*, 299 Conn. 447, 482–83, 10 A.3d 942 (2011) ("when the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal")

[5] Prior to the start of evidence, the defendant filed a motion to require notice of uncharged misconduct evidence. After first noting that the motion was untimely filed, the court declined to act on the motion, stating that it was going to wait for the defendant's objections concerning the evidence presented.

[6] With regard to disorderly conduct, the court charged the jury as follows: "Now concerning disorderly conduct, the defendant is charged in court two with disorderly conduct. The statute defining this offense reads in pertinent part as follows: a person is guilty of disorderly conduct when, with the intent to cause inconvenience, annoyance or alarm, engages in fighting or in [violent], tumultuous or threatening behavior.

"For you to find the defendant guilty of this count the state must prove the following elements beyond a reasonable doubt. First the defendant acted with the intent to cause inconvenience, annoyance or alarm. The predominant intent must be to cause what a reasonable person operating under contemporary community standard[s] would consider a disturbance to or an impediment of a lawful activity, a feeling of vexation or provocation, or a feeling of anxiety prompted by threatened danger or harm.

"The words inconvenience, annoyance or alarm refer to what a person operating under contemporary community standards would consider a disturbance to or impediment of a lawful activity, a deep feeling of vexation or provocation, or feeling of anxiety prompted by threatened danger or harm.

"The second element is that the defendant engaged in fighting or in violent, tumultuous or threatening behavior of a physical nature.

"In summary, the state must prove beyond a reasonable doubt that the defendant intended to cause inconvenience, annoyance or alarm, and . . . the defendant engaged in violent, tumultuous or threatening behavior of a physical nature.

"The court previously explained the difference between having a general intent and having specific intent. Disorderly conduct is a specific intent crime.

"In summary, if you find the state has proved beyond a reasonable doubt all the elements of the crime of disorderly conduct, you shall find the defendant guilty. However, if you find the state has failed to prove one or more of the elements beyond a reasonable doubt, you shall find the defendant not guilty."

[7] We are likewise not persuaded that an error exists that is so obvious that it affects the fairness and integrity of and the public confidence in the judicial proceedings or that the failure to grant relief will result in manifest injustice. We, therefore, decline the defendant's invitation to reverse his conviction for plain error. See *State* v. *Sanchez*, 308 Conn. 64, 77, 60 A.3d 271 (2013).

[8] The defendant also requested the court to charge the jury, as an element of the offense, that the defendant had reasonable notice of the protective order. The court declined to include the notice language in its charge. This is not at issue on appeal.

[9] In his reply brief, the defendant concedes that the error may have been induced as a result of his request to charge.

[10] See www.jud.ct.gov/JI/criminal/part6/6.8-1.htm (last visited September 11, 2014).

[11] The court charged as follows: "General intent is the intent to engage in conduct. Thus, in this case it is not necessary for the state to prove that the defendant intended the precise harm or the precise result which occurred, rather the state is required to prove that the defendant intentionally and not inadvertently or accidentally engage in his actions. In other words, the state must prove that the defendant's actions were intentional, voluntary and knowing rather than unintentional, involuntary and unknowing. Specific intent is the intent to achieve a specific result. A person acts intentionally with respect to a result when his conscious objective is to cause such result."

[12] We further decline to review this claim pursuant to our supervisory authority, because the defendant has not demonstrated a compelling reason why the jury instruction under review implicates either the integrity of this particular trial or the perceived fairness of the judicial system as a whole. See *State* v. *Elson*, 311 Conn. 726, 764–65, 91 A.3d 862 (2014).

[13] The defendant also argues that because the court indicated that the objection was overruled on the grounds that "its cumulative, superfluous, she's already testified," the court did not perform the required balancing test. We note, however, that a trial court is not required "to use some talismanic phraseology in order to satisfy this balancing process. Rather . . . in order for this test to be satisfied, a reviewing court must be able to infer from the entire record that the trial court considered the prejudicial effect of the evidence against its probative nature before making a ruling." *State* v. *Nunes*, 260 Conn. 649, 689–90, 800 A.2d 1160 (2002).

[14] The victim testified as follows:

"[The Prosecutor]: And after he threw the bottle, what did you do, ma'am?

"[The Victim]: I had to get up off the bed because it was gonna go crazy. Mr. Chol Mangor's a big guy, and he was gonna go right after him. So, I had to get up, call 911 right away; my first instinct was to call 911. I grabbed my phone; it was charging; I call—you know, grab my phone call 911. And between calling 911, I had to keep one person this way and the other person this way because it was just too much."

---